No. 1216.

MRS. LAURA MALLARD, WIDOW, ET AL. VS. THOMAS C. ANDERSON ET AL.

Under Section 2387 of the Revised Statutes of the United States, the entry of lands authorized to be made by the corporate authorities of towns "in trust for the several use and benefit of the occupants thereof," is made for the benefit of such occupants, and the title received is, in effect, the title of the occupants. Judicial and special mortgages granted by said occupants prior to the discovery of their defective title attach to the lands immediately on the entry. Where proceedings are in progress to enforce such mortgages, transfer by the occupant to a third person is unlawful under Act No. 3 of 1878, and cannot sustain a conveyance by the corporate authorities to such transferree. whose title will be annulled at suit of the occupant's mortgage creditors.

APPEAL from the Twenty-fifth District Court, Parish of St. Landry. Debaillon, J.

K. Baillio for Plaintiffs and Appellees.

Perrodin & DuRoy for Defendants and Appellants.

The opinion of the Court was delivered by

FENNER, J.   Plaintiffs are creditors of Thomas C. Anderson by judgment rendered in 1875 and recorded in this parish in 1877.   In execution of this judgment they seized a certain immovable, designated as Lot No. 5 in the town of Washington, and on failure of the offering for cash, the same was adjudicated, on twelve months' credit, to Anderson, the judgment debtor, for $3850, who furnished his twelve months' bond importing special mortgage and vendor's privilege on the property. Various attempts to enforce this bond were thwarted by successive injunctions until, in February, 1882, plaintiffs sued out their last fi. fa., under which the property was again seized.   New injunctions were taken out, which were in due course dissolved. *

The lot in controversy had been held by Anderson under title supposed to be valid, dating back to 1849.

In the year 1882, however, it was discovered that a certain portion of the town of Washington, including this lot, had never been validly severed from the public domain and still belonged to the United States.

Such a contingency seems to have been not without precedent, and Congress had provided means for the protection of occupants of such property and the perfection of their titles by sections 2387 and 2391 of the United States Revised Statutes, which are as follows:

"Sec. 2387. Whenever any portion of the public lands have been or may be settled upon and occupied as a town site, not subject to entry under the agricultural preëmption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or territory in which the same may be situated."

Section 2391, almost immediately following, reads thus:

"Any acts of the trustees not made in conformity to the regulations alluded to in section 2387, shall be void."

Acting in virtue of this statute, the corporate authorities of the town of Washington, through their mayor, William Curley, caused the said property to be entered at the proper land office and at the *minimum* price, "for the several use and benefit of the occupants thereof," and on the 20th day of April, 1883, received a certificate or receipt evidencing entry and title. It was found that the proportion of cost due by lot No. 5 was fifteen dollars and, on payment of this sum, the mayor stood ready to convey the title to the occupant thereof.

The vision of an opportunity to slip this property out of the hands of his pursuing creditors immediately presented itself to Anderson, and on April 23, 1883, he executed an act of sale of the property to Frank G. Ulrick for two thousand dollars, payable entirely in notes falling due respectively on January 1st, 1884, and January 1st, 1885. Armed with this act of sale, Ulrick demanded title from Curley, mayor, who executed the same on payment of the fifteen dollars above alluded to.

On the discovery of these proceedings, plaintiffs instituted the present action, the objects of which are:

1. To have the conveyances from Anderson to Ulrick and from the mayor to Ulrick decreed to be null.

2. To have the registry of said sales and resultant mortgages erased from the conveyance and mortgage books of the parish.

3. To compel the mayor to receive the sum due from Anderson and thereafter to execute a transfer in favor of their debtor Anderson.

From a judgment in favor of plaintiffs, as prayed for, Ulrick alone has appealed.

We are perfectly clear upon the following propositions:

1. That under the provisions of section 2387 United States Revised Statutes, the entry of this land by the mayor, Curley, was made as the trustee and for the exclusive benefit of Anderson, that he held the title in trust for Anderson, and that his title was, in effect, the title of Anderson, subject to the duty of paying his ratable portion of the cost of entry.

From this it follows that, conceding the nullity of Anderson's prior title, the property fell at once under the judicial mortgage of plaintiffs, and also, by the effect of Art. 3304 Rev. C. C., under their special mortgage resulting from the twelve months' bond.

In Robertson vs. Wood, 5 Ann. 197, it was held that the receipt of a United States Receiver for price of public lands vested such title as to subject the land to judicial mortgages recorded against the holder, although the legal title remained in the United States until the patent was issued, and the holder's title was equitable merely. A similar equitable title was vested in Anderson here, to be perfected into a legal title by conveyance from his trustee, Curley, mayor.

2. That considering the pendency of proceedings to execute the foregoing mortgages, the transfer by Anderson to Ulrick was unlawful and without effect as against plaintiffs, under the express provisions of Act No. 3 of 1878, amending Art. 2453 Rev. C. C., and that although not an absolute nullity, it was null as regards them. Copes vs. Guilbeau, 34 Ann. 1032.

3. That Curley's conveyance to Ulrick, except so far as authorized by the aforesaid transfer from Anderson to Ulrick, was utterly unlawful and void: and the latter being itself avoided, the former necessarily falls with it.

The titles of Ulrick, upon which alone his rights rest, being thus destroyed, his interest in this controversy vanishes; and he being the only appellant, we have no concern with the propriety of the other relief awarded to plaintiffs.

Judgment affirmed.